UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHLAN LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22 C 1585 |
| | ) | |
| HOOVESTOL, INC., | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Richlan Lewis was a part-time tractor truck driver for Hoovestol, Inc. from 2017 to 2019. In June 2019, he suffered injuries to his head, neck, back, knee, and eye from a car accident in his personal vehicle after work hours. Lewis took a three-month leave of absence from work to recover from these injuries. Before returning to work, Lewis was required by Hoovestol's policy and by federal regulations to undergo a medical physical examination that would confirm his ability to drive safely. Lewis was examined at an authorized clinic and medically cleared to return to work, but Hoovestol staff refused to accept the hospital's authorization because they noticed, upon their own inspection, that the "health history" portion of the medical forms made no mention of injuries related to his car accident. Lewis never received a new physical examination and was eventually terminated in January 2020. On March 29, 2022, he filed a pro se complaint [10] against Hoovestol alleging race and disability discrimination. Before the court now are the parties' cross-motions for summary judgment. For the reasons set out below, Defendant's motion [50] is granted, and Plaintiff's motion [60] is denied.

## BACKGROUND

On August 16, 2017, Plaintiff Richlan Lewis, a Black male, started working as a part-time tractor truck driver for Defendant Hoovestol, Inc., a contract carrier whose primary business includes hauling mail for the United States Postal Service ("USPS"). (Def.'s Rule 56.1 Statement of Undisputed Material Facts ("DSOF") [52] ¶¶ 4, 7.) As a driver for Hoovestol, Lewis's primary

job duties included "transport[ing] and deliver[ing] freight . . . in a safe, efficient, timely and legal manner, using designated company vehicle." (*Id.* ¶¶ 8, 9.) His job description also listed as an "essential function" that he "comply with state and federal laws, [Department of Transportation ("DOT")] rules and regulations, and company policies and procedures." (*Id.* ¶ 8.) Though Lewis worked for Hoovestol for approximately two years, he did not maintain a consistent work schedule. (*Id.* ¶ 9.)

On June 4, 2019, Lewis was involved in a car accident in his personal vehicle during off-work hours. (*Id.* ¶ 11.) He suffered injuries to his head, neck, back, knee, and eye and was taken by ambulance to Ingalls Memorial Hospital in South Holland, Illinois. (*Id.* ¶¶ 12–17.) Hospital notes do not appear in the record, but Lewis testified at his deposition that he underwent various diagnostic tests which showed that he had suffered "some kind of sprain" in his neck and back and had some general bruising, but "nothing was broken." (*Id.* ¶ 12; Ex. B ("Lewis Dep.") to DSOF [52-2] at 26:22–27:16.) He was discharged from the hospital that day with advice to take Tylenol as needed for his pain. (Lewis Dep. at 27:17–21.) Lewis later sought out and received chiropractic treatment for his injuries. (DSOF ¶¶ 15–17.)

Immediately following the accident, Lewis took a three-month leave of absence from work. (*Id.* ¶¶ 18, 19.) In September of 2019, after his chiropractor cleared him to work again, Lewis reached out to Hoovestol requesting to resume employment. (*Id.* ¶ 19.) Because Hoovestol provides transportation services for USPS, Lewis was subject to DOT and Federal Motor Carrier Safety Administration ("FMCSA") regulations, which require drivers to obtain a physical before returning to work after an accident. (*See id.* ¶ 20.)[1] The regulations require that the physical examination be done at a qualified medical clinic and that the results of the examination be recorded on a "Medical Examination Report Form." (*See id.* ¶¶ 21–23.) The safety compliance

---

[1] *See* 49 C.F.R. § 391.45(g) ("The following persons must be medically examined and certified in accordance with § 391.43 as physically qualified to operate a commercial motor vehicle . . . [a]ny driver whose ability to perform his or her normal duties has been impaired by a physical or mental injury or disease.")

manager for Hoovestol, Denise Beckel, provided Lewis with a list of eligible clinics where he could get his physical examination, and Lewis scheduled his appointment with UChicago Medicine at Ingalls for October 7, 2019. (*Id.* ¶ 25; Ex. A ("Decl. of Denise Beckel") to DSOF [52-2] ¶¶ 1, 11.)

Lewis's appointment began with a clinic staff member (who is not identified) helping him to complete Section One of the Medical Examination Report Form. (Lewis Dep. at 29:17–30:4.) This section of the form is titled "Driver Information" and contains personal identification questions and health history questions. (*See* Ex. A-4 ("Lewis Medical Examination Report Form") to DSOF [52-1] at 17-21.) Lewis was asked those questions, and the staff member entered his responses into an electronic version of the form, which Lewis then signed and certified as accurate. (*See id.*; Lewis Dep. at 30:5–10; 31:13–22.) No injuries related to Lewis's car crash were documented in this section. (DSOF ¶¶ 26, 27.) Below is a screenshot of the relevant portion of Lewis's report form. (Lewis Medical Examination Report Form at 18.)



Once the first section of the form was completed, Lewis met with a nurse practitioner named Christy Davis. (DSOF ¶ 29.) Davis conducted Lewis's physical examination pursuant to Section Two of the form, documenting the medical test results from the visit, including Lewis's

3

vital signs, vision and hearing tests, and physical examination. (*Id.*) No abnormalities were documented in Lewis's physical examination, nor was there any mention of the injuries Lewis sustained during his car accident. (*See* Lewis Medical Examination Report Form at 19–20.) Ultimately, Davis determined that Lewis met the standards outlined in the federal regulations and certified him to return to work. (*Id.* at 20–21.)

After the visit (the parties do not say when), Lewis's Medical Examination Report Form was sent to Ms. Beckel. (*Id.* ¶ 30.) Upon receiving the certification, Ms. Beckel examined the clinic's findings and determined that the report was "inaccurate" because it did not properly document his medical history. (*Id.*) Beckel concluded that it was inaccurate because under the "Driver Health History" portion of Section One, the form includes "no" answers to questions one, twenty, and twenty-one, which asked "[d]o you have or have you ever had . . . 1. Head/brain injuries or illnesses . . . 20. Neck or back problems . . . 21. Bone, muscle, joint, or nerve problems"; the form also says "no" in response to the request that Lewis disclose "other health condition(s) not listed above." (Decl. of Denise Beckel ¶¶ 13–14.) Lewis's responses to these questions had to be inaccurate, Beckel reasoned, because Lewis had taken a leave of absence after his car accident due to injuries involving his head, neck and back. (*Id.* ¶ 14.) Beckel notified Lewis that she would not accept the forms and that in order for him to resume working for Hoovestol, he needed to obtain an accurate physical exam. (*Id.* ¶ 15.) Beckel also claims that she attempted to schedule an appointment for Lewis to return to the clinic and get a new physical, but that someone at the clinic told her that they would not let Lewis return for another visit because he had been dishonest during his first visit.[2] (DSOF ¶¶ 32–33.)

---

[2] Defendant does not say when or with whom this alleged conversation took place, let alone describe the context of the clinic's staff member's alleged statement. Assuming the statement from the clinic employee is admissible at all, the court notes that the employee could not have known that Lewis had been "dishonest" in failing to disclose his injuries unless advised of those injuries by someone at Hoovestol.

4

For his part, Lewis is adamant that he did not lie to the clinic staff about his health history. During his deposition, he explained that he did not complete the form himself, and instead relied on a staff member to read to him the questions and complete the form on his behalf—leading to details being lost in translation. Specifically, Lewis says he was under the impression that he was being asked if he was experiencing the ailments listed in the health history section *at that time*, not whether he had *ever* had the particular issue. As he puts it:

> [W]hen they was asking me this, they asked me do I have a head injury, the way they told me, the question is do I have one now. And I said no . . . they didn't say when . . . If they said did you have one in the past, I would have said yes . . . She asked me nonchalantly do you have a head injury, and I said no. I thought she means now, like is my head hurting now . . . If they wanted me to go -- they wanted me to say have I ever had it the last 20 years, I would have say well, yeah, back 20 years ago.

(Lewis Dep. at 34:10–21.)

Regardless of this apparent confusion, Hoovestol refused to accept Lewis's medical form as is, and Lewis did not otherwise obtain a new Medical Examination Report Form from the UChicago clinic or any other qualified clinic. (DSOF ¶ 34.) So, on January 3, 2020, Hoovestool fired Lewis because of "his inability to provide an accurate Medical Examination Report Form following his failure to provide accurate information during his examination." (*Id.* ¶ 35.)

## **PROCEDURAL HISTORY**

On March 29, 2022, Lewis filed a pro se complaint [10] against Hoovestol. His complaint alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981, and discrimination based on disability in violation of the Americans with Disabilities Act ("ADA"). (*See* Compl. 3–4.) On January 3, 2023, Hoovestol filed a motion for summary judgment [40] on all of Lewis's claims. On September 13, the court held an in-person hearing on Hoovestol's motion and dismissed Lewis's ADA claim because the record contains no evidence that Lewis is disabled or perceived as disabled. With respect to the race discrimination claim, however, the court denied Defendant's motion without prejudice. The court directed the parties to address several gaps in the factual record and to

5

engage in good-faith settlement efforts, after which, if no resolution was made, Hoovestol would have leave to file a renewed motion. (*See* Minute Entry [49].) On October 4, 2023, after certifying that the parties had engaged in unsuccessful settlement efforts, Hoovestol filed its renewed motion for summary judgment [50] on Lewis's remaining claim of race discrimination, and on January 3, 2024, Plaintiff filed a cross-motion for summary judgment [60].

## LEGAL STANDARD

The court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (internal quotation marks and citations omitted). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan*, 4 F.4th at 536 (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018)).

## DISCUSSION

Lewis did not comply fully with Local Rule 56.1(b) despite receiving a notice from Defendant warning him of the consequences of failing to do so. (See Notice to Unrepresented Litigant [55].) He did not submit a response to Defendant's statement of facts. *See* L.R. 56.1(b)(2). He did file a statement of additional facts opposing summary judgment [59], but he did not support the statements with any record citations and, more critically, his seven proffered statements of fact are generally not material to his allegation of race discrimination. *See* L.R. 56.1(b)(3). Additionally, Lewis himself filed a purported motion for summary judgment [*see* 60],

6

but he did not support his motion with a memorandum of law and did not submit any evidence relating to his case, instead submitting a single-paragraph letter (see [61]) expressing his views.[3]

A district court has discretion to enforce local rules strictly, *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 956–57 (7th Cir. 2021) (collecting cases), but the court is also free to interpret an unrepresented litigant's submissions liberally, and has done so in this case. With respect to Defendant's summary judgment motion, the court examines the evidence in the light most favorable to Lewis as the nonmoving party. Even in that light, however, the court sees no material disputes of fact precluding summary judgment. As explained below, Defendant's motion for summary judgment is granted, and Plaintiff's motion is denied.

**Race Discrimination**

Title VII prohibits an employer from discriminating against an employee based on his race. 42 U.S.C. § 2000e-2(a)(1). To succeed on a claim under Title VII, a plaintiff must prove "(1) that she is a member of a protected class, (2) that she suffered an adverse employment action, and (3) causation." *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018)). The Seventh Circuit has recognized two analytical frameworks for proving a claim of race discrimination: the formulaic approach of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) and the holistic approach of *Ortiz v. Werner Enters.*, Inc., 834 F.3d 760, 765 (7th Cir. 2016). *See Igasaki*, 988 F.3d at 957 (recognizing the two methods of proving a Title VII claim). The court assesses Lewis's claim under both approaches.

Under *McDonnell Douglas*, if the plaintiff presents prima facie evidence of discrimination, the employer must then offer a legitimate, nondiscriminatory reason for the adverse action, and if that happens, plaintiff bears the burden of showing "that the employer's stated reason was a pretext." *Igasaki*, 988 F.3d at 957 (citation omitted). To make out a prima facie case of

---

[3] In his letter, Lewis asserts that the case involves "people that were hurt and the ones that were discriminated against"; that "this company does illegal methods against" Black persons and their white friends; and that when a "building is on fire," onlookers are responsible to assist "that old lady or . . . that child in the building."

discrimination, an employee must show that (1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *See Gamble v. Fiat Chrysler Autos. U.S. L.L.C.*, 993 F.3d 534, 537 (7th Cir. 2021) (citation omitted). If a plaintiff is unable to establish his prima facie case of discrimination under *McDonnell Douglas*, then the "employer may not be subjected to a pretext inquiry." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 327 (7th Cir. 2002). Defendant admits that Lewis satisfies prongs one and three of his prima facie case but claims that he cannot establish that he met the company's legitimate job expectations and that he has not pointed to any similarly situated employees who received better treatment.

With respect to legitimate job expectations, Hoovestol argues that Lewis did not meet those expectations because he failed to submit a valid Medical Examination Report Form, as required by federal regulations and company policy. In the court's view, the matter is not quite so straightforward. There is no dispute that Lewis was physically examined by a qualified health professional and ultimately certified as safe to resume driving for Hoovestol. (*See* Lewis Medical Examination Report Form at 19–21.) Hoovestol seems to be arguing, however, that Lewis's certification was technically non-compliant because the company independently decided it was inaccurate. This argument rests on the fact that even though Lewis sustained injuries during his car accident, there is no mention of head/brain, neck/back, or muscle/joint problems called for in the health history section of his medical form. Whether or not this type of omission renders Lewis's Medical Examination Report Form invalid is not clear to the court. Lewis contends that he understood hospital staff were asking about his current symptoms, not his past injuries. And he had no obvious reason to withhold information about his accident; he had been on leave precisely because of the accident and required a physical examination because of the injuries he sustained in that accident. Hoovestal's assertion that the Ingalls clinic refused to re-examine

Lewis because he had been "dishonest" is at least curious because, as noted, information that would lead to that conclusion could only have come from Hoovestal itself.

Hoovestal is nevertheless correct that Lewis has not provided evidence that similarly situated employees outside of his protected class were treated more favorably. To establish that a comparator employee is similarly situated, "a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369 (7th Cir. 2019) (internal quotation marks and citations omitted). The question of whether a comparator is sufficiently similar is typically left to the jury, unless "the facts of a case suggest that no reasonable jury could see enough commonality for a meaningful comparison between the employees." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 927 (7th Cir. 2019) (citation omitted).

Lewis identifies one white employee, Tim Kinman, who suffered injuries and was, according to Lewis, treated more favorably than Lewis was. (DSOF ¶ 37.) Lewis has not identified Kinman's supervisor or his job description, and Hoovestal asserts that Kinman had a different position than Lewis (he was a full-time driver and Lewis was part-time) and that they had different supervisors. (*Id.* ¶¶ 7, 38.) Moreover, while Kinman was injured in January 2020 and subsequently subjected to a DOT physical examination, he did not return to work for Hoovestol after his injury because of a separate issue, discovered during his physical, which resulted in his employment with the company ending in March 2020. (*Id.* ¶ 38.) Simply put, Kinman was neither similarly situated to Lewis nor treated more favorably. Accordingly, Lewis cannot make out a prima facie case of race discrimination under *McDonnell Douglas*.

Lewis's case fares no better under *Ortiz's* holistic approach. Under *Ortiz*, the court must weigh the evidence as a whole and determine whether a reasonable fact finder could conclude that the plaintiff's race was a motivating factor in the adverse employment action to which they

9

were subjected. *See Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020) (internal quotation marks and citation omitted). The Seventh Circuit has "identified three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020) (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). Lewis provides the court with no evidence that staff at Hoovestol made any racist or suggestive comments. And, as already explained, there is no evidence that any similarly situated non-Black employee was treated more favorably than Lewis. There is some ambiguity about whether Lewis gave inaccurate information in the medical examination, but nothing about the circumstances suggests that race, rather than Hoovestal's concerns about that inaccuracy, was a motivating factor for Lewis's termination.[4]

## CONCLUSION

Defendant's motion for summary judgment [50] is granted and Plaintiff's motion [60] is denied.

ENTER:

Dated: April 2, 2024

REBECCA R. PALLMEYER
United States District Judge

---

[4] Lewis also brought a claim of race discrimination under § 1981, based on the same set of facts as his Title VII claim. As Lewis cannot succeed on his Title VII race discrimination claim, his claim under the more stringent § 1981 standard must also fail. *See Lewis v. Indiana Wesleyan Univ.*, 36 F.4th at 759 (stating that the legal analysis for Title VII and § 1981 claims are "largely identical" except that Title VII claims "simply require that race be a motivating factor" in the employment decision whereas § 1981 claims require a "showing that race was a but-for cause of the injury." (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020)).